[Civ. No. 162.  First Appellate District.—March 7, 1906.]

CHARLES STEWART, Respondent, v. D. H. WHITTE-
MORE, et al., Executors, etc., of PHILIP CADUC,
Deceased, Appellants.

GIFT INTER VIVOS—SUBSEQUENT LOAN TO DONOR—CONSIDERATION.—A
gift of money made *inter vivos,* and which was completed by a
transfer and delivery by the donor to the donee, passes the title
and is not revocable; and a subsequent loan of the same amount of
money by the donee to the donor is based upon a sufficient con-
sideration.

ID.—EVIDENCE ALREADY GIVEN.—The refusal to permit a witness to an-
swer a question in reference to a matter as to which she had already
testified fully is not prejudicial.

ID.—EVIDENCE AS TO ESTATE AND RELATIVES OF DONOR.—In an action
against the estate of a deceased person, in which the question in-
volved was as to whether or not certain gifts of his separate prop-
erty made by the deceased to the plaintiff were valid, it is not error
to exclude evidence as to who were the relatives of the deceased,
and the amount of the estate he left.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.  J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

W. H. Fowler, for Appellants.

George N. Williams, and Andrew Thorne, for Respondent.

COOPER, J.—The complaint contains two causes of action,
the first being upon a promissory note made by the deceased,
Philip Caduc, in his lifetime, for $1,000, dated November
15, 1901, with interest from date at the rate of seven per cent
per annum; the second being for $2,027.50, for moneys al-
leged to have been loaned and advanced by plaintiff to de-
ceased at his special instance and request, on the seventeenth
day of June, 1902, less $100 paid thereon.  It is alleged and
admitted that claims properly verified for said amounts were
duly presented to defendants as executors, and said claims

rejected. Defendants, in their answer, denied that there was any consideration for the said promissory note, and alleged that the same was wholly without consideration or value of any kind, and further denied that deceased, on the seventeenth day of June, or at any other time, became or was indebted to plaintiff in the sum of $2,027.50, or in any sum, on account of moneys loaned or advanced to deceased or at all. The answer further contained a cross-demand for $100, being the $100 which plaintiff alleged was paid on the second alleged cause of action. The court found the allegations in plaintiff's complaint to be true, and found against defendants on the allegations as to want of consideration, and also found against defendants on this cross-complaint. Judgment was accordingly entered for plaintiff. Defendants prosecute this appeal from the judgment, on the judgment-roll and a bill of exceptions.

It is urged that the findings of the court are not supported by the evidence, and that the evidence shows that the alleged note was without consideration, and that the $2,027.50 was the money of the deceased at the time he received it from plaintiff. We are of the opinion that the findings are supported by the evidence. In regard to the $1,000 note the facts are substantially as follows: In the month of November, 1901, deceased, having been for some time afflicted with cancer of the throat, determined to go to the hospital for an operation, which he evidently deemed a dangerous one. He had been on intimate and friendly terms with plaintiff for some years, and on November 15th he came into plaintiff's office, without solicitation or suggestion, and said to plaintiff, "Charley, whereabouts do you bank?" Plaintiff informed him that he did his business at the First National Bank, whereupon deceased said to plaintiff, "I am going to give you $1,000, and I want you to loan me $1,000 on my note." The note, at the instance of and under the direction of the deceased, was then drawn up, due three days after date, and delivered to plaintiff, deceased at the time saying to him: "Charley, if anything happens to me, take the note to Mr. Kane, and he will pay it. I have appointed Mr. Kane and Mr. Whittemore executors of my will." When asked by plaintiff what he was to do with the money, deceased said:

"Keep it. It belongs to you." · At the request of the deceased plaintiff drew a check in favor of deceased on the First National Bank, which check was kept by plaintiff until November 18th, when deceased again came to the office of plaintiff with a deposit tag for $1,000, which deceased had deposited to plaintiff's credit in the First National Bank, at the same time saying to plaintiff, "I have given you $1,000." The plaintiff then, at the request of deceased, delivered the check which he had drawn on the First National Bank for $1,000. Thus, the substance of this transaction is that deceased gave and delivered to plaintiff, by depositing it in his bank to his credit, the sum of $1,000. He then borrowed the sum of $1,000 from plaintiff, giving the promissory note described in the complaint therefor. This shows a gift of $1,000 in money to plaintiff. The consideration for the note is the sum of $1,000, which was given by plaintiff to deceased after the said sum of $1,000 had become the property of plaintiff by gift duly executed.

As to the $2,027.50, the facts are substantially as follows: Deceased had temporarily recovered from the operation on his throat, but was troubled with his eyes, and evidently expected to go to the hospital again for treatment, and about January 16, 1902, he again came into the office of plaintiff, counted out and handed to plaintiff $1,500, mostly in greenbacks, which money so given to plaintiff was kept by him. Deceased then asked plaintiff to loan him $1,500, which the plaintiff did, giving the deceased a check for said sum, and at the same time deceased made to plaintiff his promissory note for $1,500, due five days after date, with interest at the rate of six per cent per annum. Afterward, on the twenty-second day of January, 1902, deceased again came to plaintiff's office, and gave plaintiff $500 in coin, made out a note to plaintiff for the amount, and borrowed the money from plaintiff, taking a check for the amount of $500. These two latter notes were not delivered at the time, but were kept by the decedent until a few days before he again went to the hospital for an operation on his eyes sometime in March, 1902, when he took them and delivered them to plaintiff. When deceased took these notes to plaintiff he said to

him: "Charley, here are notes for the money that I owe you." Plaintiff replied to deceased that he did not see why deceased should do that for him. Deceased replied: "Well, I would rather give my money to those I am fond of, than to somebody I don't care for to get it after my death." Deceased again came out of the hospital, and the two latter notes were paid by deceased to plaintiff by check of the Patent Brick Company, of which deceased was president; the amount with interest being $2,027.50. The money was placed by plaintiff in his bank to his general account. About the middle of June, 1902, the deceased again went to plaintiff's office, and the witness Gunther testified that deceased said, "Charley, I want you to loan me some money," and that, when plaintiff said, "How much do you want?" deceased replied, "Can you let me have the amount I sent you in payment of my notes?" The plaintiff then, at the request of deceased, drew a check in his favor for $2,027.50, which check was paid at plaintiff's bank, and the money received by the deceased. This is the amount for which recovery is sought on the second cause of action.

On the twenty-first day of December, 1902, Philip Caduc died. What was the intention of deceased when he gave the money to plaintiff? It was evidently to make a gift that was valid. He took the precaution to pay the first $1,000 into the bank to plaintiff's credit, and to subsequently count out and give to him the $2,000 for which the two latter notes were given. These notes were by deceased paid to plaintiff on April 10, 1902, and the money kept by plaintiff until it was again borrowed by the deceased. The money was the money of plaintiff when borrowed by the deceased in June, 1902. It had been given to him by manual delivery, borrowed from him, and again delivered to him when the notes were paid. We think, as said in the opinion of the learned judge of the trial court: "All this matter had its foundation in a gift simply, but it was, nevertheless, the intention of Caduc, as shown by the evidence, to give his friend something after he was dead, and to place the transaction in such form that he would be able to recover it by legal proceedings." In cases where feeble old people in poor health are prevailed

upon by designing persons to make gifts or bequests, courts should carefully scrutinize the transactions, and require clear and convincing evidence before upholding them. While this is true as a general rule, it is equally true that when a man of sane mind desires to, and does, by gift dispose of that which is his own to a dear friend or relative, fully knowing his own mind, the courts should uphold the disposition so made. The gift made by deceased was by a transfer and delivery of the money, made voluntarily and without consideration. It passed the title to the money, and was not revocable. (Civ. Code, secs. 1146-1148.) The fact that the money was afterward loaned to deceased does not show that it was not a gift. In fact it would seem to emphasize the intention of the deceased to make a gift, for the reason that he delivered the money to plaintiff before borrowing it. Deceased *ex industria* procured the money, and delivered it to plaintiff so as to make the transaction complete and valid. He could have given the plaintiff the notes without any money having passed; but evidently to avoid any question, he gave the money, delivered it, parted with the title to it, and then borrowed it for present purposes. It was not a gift *causa mortis*. The circumstances do not show that it was intended to take effect only in case of the death of the giver. It was intended as a present gift. Deceased, even after passing the peril of the operation for cancer of the throat, again went to plaintiff and gave him more money, delivering it with his own hands. His declaration that he would rather give his money to those he was fond of than to somebody he did not care for, tended to show his intention. He gave the money. There is evidence to support the finding that he intended to give it. His intentions must be carried out.

This disposes of the main question, but we will notice such other of the alleged errors as are deemed most important. Defendant placed a witness, Miss Lemaire, upon the stand, who testified that she was present during a portion of the conversation about the first $1,000; that deceased requested plaintiff to give her the check for the $1.000, and that plaintiff did so, and went to the bank with her, and identified her and she received the money. She was then asked: "Do you know where the $1,000 that you mentioned, that was in-

volved in this conversation on the eighteenth day of November, 1901, came from?" The court sustained an objection to this question, and it is claimed that the ruling was erroneous. It was shown by the testimony of the plaintiff, as a witness for defendants, that the $1,000 was deposited by deceased in plaintiff's bank. That was as far back as defendants had any right to go, and was evidently what they were trying to show by Miss Lemaire. Not only this, but the witness had already testified that she received the check for the $1,000 when given to deceased by the plaintiff, and "All I know is what Mr. Caduc told me outside of Mr. Stewart's presence; know from what Mr. Caduc told me, check was to go to me; was not present at conversation had on the 15th; on the 18th was; can state it over again; that is all there was said; have stated it; the clerk can read it; cannot tell you what was said by each of the parties; it is the same thing over again; you can read it; cannot tell you anything else." The ruling was, therefore, harmless.

It is claimed that, as deceased was a married man, the defendants should have been permitted to show that the gifts were of community property, and for that reason void. It is not pointed out in the brief as to the evidence by which it was sought to show that the money was community property. The question is not presented on this record in such manner that we can review any ruling on said matter. The court did not err in excluding evidence as to who were the relatives of the deceased, and the amount of the estate he left. The question before the court was as to whether or not the gifts were valid. If the money belonged to deceased, in the absence of any question as to community property, he had the right to give it, regardless of the number of relatives he had, or the size of the estate. We find no prejudicial error in the record.

The judgment is affirmed.

Harrison, P. J., and Hall, J., concurred.