[Civ. No. 3355. First Appellate District, Division Two.—May 19, 1920.]

## W. J. HYNES, as Administrator, etc., Respondent, v. PEGGY WHITE, Appellant.

[1] TRIALS—UNIMPEACHED EVIDENCE—DISREGARD BY COURT.—A court may not arbitrarily disregard the unimpeached evidence of a single witness.

[2] GIFTS—REDELIVERY OF PROPERTY TO DONOR—EFFECT OF.—Where, in the delivery of property from one person to another, all the elements of a gift *inter vivos* are present, the act of the donee in immediately giving absolute possession of the property to the donor does not militate against the gift.

[3] ID.—ESSENTIALS OF VALID GIFT.—The three requisites of a valid gift are, first, an intention on the part of the donor to make it; second, a delivery to the donee of the thing given; and, third, acceptance by the donee of the thing given.

[4] ID.—REVERSION TO DONOR UPON DEATH OF DONEE—VALID CONDITION.—A gift, coupled with the condition that upon the death of the donee the property shall revert to the donor, is valid.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

David E. Bergman for Appellant.

Cullinan & Hickey for Respondent.

BRITTAIN, J.—The respondent, as the administrator of the estate of Alexander Hay, deceased, sued the appellant to recover certain bonds, or their value. In a second count the plaintiff sought to recover $500 with interest claimed to have been loaned by Hay to the defendant. The defendant denied the allegations of ownership of the bonds by the estate, and alleged affirmatively that Hay had canceled the

2. Retention or resumption of possession by donor as affecting gift, note, 32 L. R. A. (N. S.) 219.

Transfer of key to receptacle as delivery of possession sustaining gift of contents, note, 40 L. R. A. (N. S.) 901.

note given by her to evidence the five hundred dollar loan. The case was tried without a jury. The trial court found that the defendant was not entitled to certain of the bonds claimed to have been given her May 31, 1913, because it was further found that they were intrusted to her without the intent on the part of Hay to make a gift. It was found that other securities claimed to have been given to the defendant in January, 1914, were given her, and also that Hay forgave her the five hundred dollar debt. It further found that the bonds found to belong to the estate had been sold by the defendant and that their value was . $5,874.50, for which amount judgment was rendered against her. A motion for new trial was denied, and it is claimed that the court erred therein as also in certain proceedings during the trial concerning the tender of the oral evidence of the defendant to explain her evidence given on her deposition on which alone the plaintiff rested his case. It is claimed the evidence does not support the findings, and because this court' has reached that conclusion, it is unnecessary to consider the new trial ruling or the tender of the defendant's oral testimony.

The only evidence introduced on behalf of the plaintiff was the deposition of the defendant taken at the instance of the plaintiff. On the part of the defendant there was evidence introduced strongly tending to support the evidence given by her at the taking of the deposition. Reduced to narrative form, the evidence concerning the claimed gift was that Alexander Hay at the time of the gift was about seventy years old. He was divorced many years before. His former wife had remarried twice, and at the time of the gift was living with her sister. After the divorce Hay took up his home with another sister, who was not living at the time of the gift, and the defendant and her brother were the children of that sister of the divorced wife. Hay was fond of the children, particularly of the defendant, and frequently assured her mother that in the event of her death, he would take care of his niece. She grew to young womanhood and married Douglas White, who at the time of the trial was general industrial agent of the Salt Lake Railroad. His business required him to travel a great deal, and apparently his wife at times traveled with him. There was no intimacy between the defendant and her two aunts. After the marriage of

the defendant, who lived in Southern California with her husband, Hay visited their home on one or two occasions, and when they were in San Francisco, they visited him. He was an employee of the custom service in San Francisco, earning from $125 to $150 a month. He had no one dependent upon him and no near relatives. In 1913 Douglas White, who was in San Francisco, met Hay, who requested him to telegraph for his wife to come to San Francisco. On White telling him he was returning to Los Angeles that evening, and would send her up, Hay said, "Well, send her up just as quick as you can, because I wish to make arrangement regarding what little property I have."

In response to this request of Hay, Mrs. White came to San Francisco, where she met Hay, and according to her evidence he asked her to go with him to the safe deposit vaults of the Union Trust Company, saying he had something to give her. Prior to that time he had kept a box in these vaults for his own use. Before the visit of Mrs. White he had rented a second box, which he took in her name, but for which she paid the rental. On receiving the box, he directed her to take it into one of the customer's rooms to which he also took his own deposit box. Taking from it the bonds found by the court not to have been given her, he said, "I want you to have these." She was asked if he did not say, "You are to have these bonds after my death, or something like that." To this she responded, "He said, 'I give them to you now—they are yours. They belong to you.'" She was asked if he did not say, "I will use the income of these bonds and stocks during my lifetime and you can have them after my death," to which she responded, "No, but in the conversation he said, 'I am going to take you over to-morrow to see Mr. —— of Sutro's, a brokerage firm, and introduce you, so he will know you and you will know him, and you can collect the money on the coupons.'" She put the securities in her box and they went to the desk where she signed an order making Hay her deputy to visit her box and gave to him one of the two keys delivered to her. This arrangement was made pursuant to a conversation which she stated was after the gift of the securities and manual delivery of them. She testified that he remarked, "You and Douglas are traveling around so much—suppose you get in a wreck or something—then this box would be

closed to me, and, of course, I don't intend to give this to
your heirs. I am giving it to you." The understanding
of both parties at the time was that the reference to her
heirs was to her two aunts, one of whom was Hay's former
wife. The evidence introduced on behalf of the defendant
was that of a number of people who knew Hay and to whom
he had stated after this transaction that he had given his
property to Mrs. White. Mrs. White also testified that she
had borrowed $500 from Hay and had given her note for it;
also that he had redelivered the note to her and told her
she need not repay that $500, and directed her to cancel the
note. Some time in 1914, she testified, she met Hay and
they again went to the safe deposit vaults, when he gave
her another bond which she placed with those given her
first. The day following the first transaction at the safe
deposit vaults, Hay did introduce her to a young man in
the banking house of Sutro & Co., and a day or two later
he took her back to the safe deposit vaults to assure himself
that she knew how to open the box. Prior to his death she
cut the coupons from the bonds, giving them to Hay to col-
lect, and, she testified, he paid her the interest collected.

From this evidence the trial court made the finding that
Hay had no intention of giving the first bonds to the defend-
ant because of the arrangement by which he was appointed
her deputy to go into the box for the avowed purpose of
preventing the bonds being taken by her two aunts in the
event her death should occur before his own. The same
conditions surrounded the gift of the bond in 1914, and he
had the same right of access to it as he had to the first
bonds, yet the trial court believed the evidence of Mrs. White
in regard to that gift as he believed her evidence in regard
to the gift of the five hundred dollar note. To reach this
conclusion, he must have rejected her positive statement that
the conversation which led to her appointing Hay her deputy
took place after the gift, although in close connection with
it. The only evidence bearing on the intention of Hay to
make the first gift was that of Mrs. White. [1] A court
may not arbitrarily disregard the unimpeached evidence of
a single witness. [2] If her statement was true, all the
elements of a gift *inter vivos* were present, and if the gift
was made, even though the donor was immediately given

absolute possession of the property, it did not militate against the gift.

[3] The cases are uniform regarding the three requisites of a valid gift: First, an intention on the part of the donor to make it. (*Knight* v. *Tripp*, 121 Cal. 674, [54 Pac. 267]; *Fanning* v. *Green*, 156 Cal. 279, [104 Pac. 308]; *Beaumont* v. *Beaumont*, 152 Fed. 55, [81 C. C. A. 251]; *Ruiz* v. *Dow*, 113 Cal. 490, [45 Pac. 867]; *Stewart* v. *Whittemore*, 3 Cal. App. 213, [84 Pac. 841].) Second, a delivery to the donee of the thing given. (Civ. Code, sec. 1147; *Beaumont* v. *Beaumont, supra; Beebe* v. *Coffin*, 153 Cal. 174, [94 Pac. 766]; *Knight* v. *Tripp, supra; Hart* v. *Ketchum*, 121 Cal. 426, [53 Pac. 931]; *Beaver* v. *Beaver*, 117 N. Y. 421, [15 Am. St. Rep. 521, 6 L. R. A. 403, 22 N. E. 940].) Third, acceptance by the donee of the thing given. (*Beaumont* v. *Beaumont, supra; Holmes* v. *McDonald*, 119 Mich. 563, [75 Am. St. Rep. 430, 78 N. W. 647]; *Beaver* v. *Beaver, supra; Frazier* v. *Perkins*, 62 N. H. 69.) The declarations of the donor both before and after the gift tended to show an intention on his part to make an absolute and unconditional gift. (*Estate of Hall*, 154 Cal. 527, [98 Pac. 269]; *Ruiz* v. *Dow, supra; Stewart* v. *Whittemore, supra;* Thornton on Gifts and Advancements, sec. 222 et seq.; *Garrison* v. *Union Trust Co.*, 164 Mich. 345, [32 L. R. A. (N. S.) 219, 129 N. W. 691]; *Waite* v. *Grubbe*, 43 Or. 406, [99 Am. St. Rep. 764, 73 Pac. 206]; *Reese* v. *Philadelphia Trust etc. Co.*, 218 Pa. St. 150, [120 Am. St. Rep. 880, 67 Atl. 124].) Where delivery of the property has once been made and possession transferred, the gift is irrevocable, and is not affected by the fact that the donor immediately thereafter comes in physical possession and control of the property without any retransfer of the ownership by the donee. (*Beaumont* v. *Beaumont*, 152 Fed. 55, [81 C. C. A. 251].) In this case, as in that, it is contended that the retention of the key of the safe deposit box by the donor with the right to resort to it, in that case for the purpose of getting the coupons, was such a retention of control and possession as would enable him to carry the bonds away and was, therefore, inconsistent with the idea of a gift of the same. But the donee had the same possession and the same power of taking away the subject matter of the gift, and not only so, but she had the rightful power to do so as well as the physical

opportunity. The cases are practically uniform in support of this rule of law. (*Reese* v. *Philadelphia Trust etc., supra; Calkins* v. *Equitable etc. Co.,* 126 Cal. 531, [59 Pac. 30]; *Stewart* v. *Whittemore, supra; Pink* v. *Church,* 60 Hun, 580, 14 N. Y. Supp. 337; *Martin* v. *Martin,* 170 Ill. 18, [48 N. E. 694]; *Garrison* v. *Union Trust, supra; Gilkinson* v. *Third Ave. R. Co.,* 44 App. Div. 472, [63 N. Y. Supp. 792]; *Waite* v. *Grubbe, supra; Marston* v. *Marston,* 64 N. H. 146, [5 Atl. 713]; *Blanchard* v. *Sheldon,* 43 Vt. 512; *Riegel* v. *Wooley,* 81 Pa. St. 227.)

On the part of the respondent it is argued that the intention to enable the donor to repossess himself of the bonds upon the death of the donee was inconsistent with a gift to her. The court cannot accept this view of the case for two reasons. [4] In the first place, the gift would have been a valid one if coupled with a condition that upon the death of the donee, the property should revert to him; and, secondly, in this case the trial court was bound, as is this court, by the positive and uncontradicted evidence of the only witness to the matter that the arrangements for the donor to repossess himself of the property in the event of the death of the donee before his own was made after the gift had been completed. Neither this court nor the trial court could reach a determination that the first gift was invalid because, if the donee had died first, the donor might not have been able to establish his right to the bonds. The only evidence in the case fails to support the finding of the trial court against the existence of an intent on the part of the donor to make the gift.

The judgment is reversed.

Langdon, P. J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 17, 1920, a majority of the Justices not having assented to the granting thereof.