[Civ. No. 2116.  Third Appellate District.—November 12, 1920.]

EDITH DE BARROS MURDOCK, Respondent, v. FLETCHER W. MURDOCK, Appellant.

[1] GIFT—RESCISSION—FRAUD.—A gift of personal property may be rescinded and set aside by a court of equity upon a sufficient showing that it was procured through or by means of the fraud of the donee.

[2] ID.—HUSBAND AND WIFE—MERETRICIOUS RELATIONS—RESCISSION OF GIFT.—A gift of personal property made by a wife to her husband may be set aside for fraud, and even where there have been no false representations or promises that the marital relations have been faithfully kept, property which has been given

by one to the other will be restored to the donor upon discovery by the latter that the donee has been before or after the gift guilty of meretricious relations with a third party.

[3] LACHES—PLEADING—APPEAL.—Where an answer does not plead laches as a defense to the maintenance of an action and the question is not therefor reviewed by the trial court, it cannot be raised for the first time on appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank G. Finlayson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Meserve & Meserve and Ingall W. Bull for Appellant.

H. T. Morrow for Respondent.

HART, J.—This is an appeal from a decree in favor of the plaintiff rescinding and setting aside, on the grounds of misrepresentation and fraud, a certain instrument in writing executed by the plaintiff to the defendant, and is upon the judgment-roll alone.

The complaint is of considerable length, but it will subserve the purpose of this decision to present the averments herein in substance. It may here properly be stated that the court's findings are in all vital particulars in strict accord with the allegations of the complaint, and, therefore, while we shall state the facts herein as they are set out in the complaint, it will be understood that such statement will embrace substantially the facts as they were found by the court.

The plaintiff and the defendant are, and at all times mentioned in the complaint were, husband and wife. On or about the sixteenth day of July, 1916, and for a long time prior thereto, the plaintiff was the sole owner, in her separate right, of approximately 160 contos, Brazilian currency, which is equal approximately to $37,500 in the coin of the United States of America, the same being then and thereafter on deposit with and held by Queiros, Barros & Company, a copartnership, at Travessa, Caiuby, Santos, Brazil, subject to the order of plaintiff and any other person or persons claiming under her. On or about the said sixteenth day of July, 1916, the plaintiff executed and de-

livered to the defendant an instrument in writing of which the following is a copy:

"Whereas, the concern known as Queiros-Barros & Company, and whose principal office and place of business is at 63 Travessa, Caiuby, Santos, Brazil, is indebted to me in the sum of approximately one hundred and sixty (160) contos, Brazilian currency, and whereas, it is my desire and intention to assign, transfer, set over and give to my said husband one-half of the amount or debt due me as aforesaid, whatever such amount may be; Now, therefore, in consideration of the love and affection which I bear my said husband, Fletcher W. Murdock, and of one dollar ($1.00) and of other good and valuable consideration, the receipt whereof is hereby acknowledged, I hereby sell, assign, transfer and give to my said husband, Fletcher W. Murdock, an undivided one-half of all my right, title and interest in and to the debt or amount so due and owing to me from the concern known as Queiros-Barros & Company, hereinabove mentioned, to be held, owned and enjoyed by him as his separate property. In witness whereof, I have hereunto affixed my hand and seal this 17th day of July, 1916."

At the time that the foregoing instrument was executed, the plaintiff also executed a writing whereby she appointed the defendant her attorney in fact, with power, among other things, to collect and receive moneys from said fund, or the whole thereof, of approximately 160 contos.

The complaint alleges that the plaintiff was, on or about the said sixteenth day of July, 1916, preparing to depart and "had arranged to make, and was about to depart from this country, without the company of defendant, upon a voyage and trip to Brazil to visit her parents in the latter country," and that it was at that time and with knowledge of such contemplated departure of plaintiff that the defendant earnestly and persistently solicited and requested the plaintiff to execute each of the above-mentioned instruments in writing, in consideration of the love and affection of plaintiff for defendant, etc., and upon the repeated representation and protestation of the defendant to the plaintiff that he was, had always been, during their married life, and would always in the future continue to be, during their married life, a true, faithful, loyal, and loving husband to the plaintiff; and upon the further representation by de-

fendant to plaintiff that he had never had, previously to said sixteenth day of July, 1916, nor would he in the future sustain, during their married life, sexual relations with any other woman than the plaintiff, but would, as he always had, remain ''an honest, true, loving, loyal, and faithful husband'' to plaintiff.

It is alleged that defendant, at the time he made said representations and promises, upon the faith of which the plaintiff was induced to execute the writings above mentioned, knew that the said·representations, statements, and promises so made to plaintiff were and each of them was false and untrue, and were made with the purpose and intent to defraud plaintiff and to induce her to assign to defendant one-half of the money referred to in the complaint and the instrument above quoted herein; that plaintiff, at the time said representations and promises were made and at the time she executed the instruments referred to above, did not know that the same were false and untrue, and would not have executed said instruments or assigned to defendant any portion of her said money had she not believed and relied on each and all said statements, representations, and promises; that defendant, ''on or about said July 16, 1916, was forty-five years of age and was an experienced and able man of wide and varied business ability, and at said time last mentioned plaintiff was of the age of twenty-eight years and wholly inexperienced in business affairs and at said time last mentioned, and for a long time prior thereto, plaintiff relied upon and trusted, and had great confidence in and affection for, the defendant, and plaintiff had acted, and did act, at and under his guidance and direction in the conduct of her affairs, all of which things at all of said times defendant well knew; that by reason of each of the aforesaid false representations and statements and promises of defendant and her said trust, confidence, and belief in him as aforesaid, and not otherwise, plaintiff executed said instrument of assignment and power of attorney hereinabove alleged.''

It is charged that, on divers occasions prior to the sixteenth day of July, 1916, to wit, in the month of December, 1913, and while the relation of husband and wife subsisted between plaintiff and defendant, the latter, without the knowledge or consent of the former, at certain stated places,

had and sustained meretricious relations with a woman other than the plaintiff, and committed acts of adultery with said woman; that in the months of August and September, 1917, the defendant on several occasions committed acts of adultery with a certain named woman (other than plaintiff) whose name it is not necessary to disclose herein; that plaintiff had no knowledge or information of the acts of adultery by defendant above referred to at the time she executed the instrument above mentioned, "nor did she prior to November 5, 1917, have any knowledge or information concerning said adultery, or any adultery, on the part of defendant, or of any acts or act of sexual intercourse by said defendant with any person other than plaintiff during the married life of plaintiff and defendant; that immediately upon plaintiff learning, on said November 5, 1917, that defendant had committed adultery as aforesaid, plaintiff separated herself from defendant and never thereafter lived with, nor is she now living with, defendant as his wife, or otherwise, and that on November 9, 1917, plaintiff herein brought suit for divorce against said defendant upon the ground of adultery, which action is now pending in the superior court in and for Los Angeles County."

The complaint further alleges that plaintiff has always conducted herself as a "true, faithful, loyal, and loving wife to the defendant in every respect." It is alleged that plaintiff first became aware of her right to rescind the instrument purporting to assign to defendant one-half of the money therein described and of the right to revoke the power of attorney referred to above on the twelfth day of December, 1917, and, accordingly, on the eighteenth day of December, 1917, caused to be served upon defendant personally her notice of rescission of said purported assignment and of her revocation of the said power of attorney.

The complaint also contains some allegations to the effect that defendant had drawn certain sums of the money assigned to him by plaintiff as above indicated and that he had invested some of said money in a certain sailboat, and the court finds that these allegations are true. The court also finds that no consideration, other than that of love and affection, passed from defendant to plaintiff for the assignment in question.

The defendant did not demur to the complaint, but filed an answer denying and admitting certain of the allegations thereof and setting up some matters in the nature of an affirmative defense.

While the appellant suggests and urges distinctively four different points upon which he claims to be entitled to a reversal of the judgment, three of said points are in effect the same, so that there are in fact but two points to be considered, and they are these: 1. That a gift *inter vivos,* being a voluntary transaction and without consideration and irrevocable, is not subject to rescission or to be vitiated upon the ground that it was induced by the misrepresentation or fraud of the donee, or for any reason; 2. Assuming that the transaction is one which may be, for sufficient legal or equitable reasons, rescinded and set aside, the complaint fails to disclose that the plaintiff was not guilty of inexcusable laches in proceeding to cause said transaction to be set aside or rescinded, inasmuch as it is not made to appear in the complaint why the discovery of the alleged misrepresentations or the falsity of the defendant's statements and misrepresentations could not sooner have been made; "nor," proceeds appellant's brief, "does it appear that, by the exercise of reasonable diligence, discovery could not sooner have been made, or knowledge of the falsity thereof obtained by the plaintiff."

The respondent first makes the point that the assignment in controversy did not involve a gift within the meaning of section 1146 of the Civil Code. The argument is that, since a gift is defined by said section to be "a transfer of personal property, made voluntarily and without consideration," any consideration, whether good or valuable, which supports a transfer of personal property, takes from such transfer one of the essential characteristics of a gift as it is defined by the section named; that the transfer in question was ostensibly supported by the consideration of love and affection—a good as legally distinguished from a valuable consideration—and that, therefore, the assignment in controversy cannot in a legal sense be denominated or held to be a gift. It is to be conceded that there seems to be much force in this position, but it is not necessary to consider the point herein, since upon another view the judgment, we are persuaded, must be affirmed.

[1] 1. Assuming that the transfer in question was a gift within the contemplation of section 1146 of the Civil Code, we nevertheless think it is clear that such a transfer may, like any other transaction purporting to involve the conveyance of property or the fixing of contractual obligations between parties, be rescinded and set aside by a court of equity upon a sufficient showing that it was procured through or by means of the fraud of the donee.

The position of the appellant is, as we have shown, that, since a gift *inter vivos* is not revocable (Civ. Code, sec. 1148), such a transfer of personal property cannot under any conceivable circumstances be revoked either by the act of the donor himself or through the force of the remedial power of a court of equity, at the instance of the latter or that of any other person. As supporting this hypothesis, he cites, among others, the case of *Stewart* v. *Whittemore,* 3 Cal. App. 213, wherein it is said on page 217, [84 Pac. 841, 843] : ''When a man of sane mind desires to and does, by gift, dispose of that which is his own, to a dear friend or relative, fully knowing his own mind, the court should uphold the disposition so made. The gift made by the deceased was by transfer and delivery of the money made voluntarily and without consideration. It passed the title to the money and was not revocable. (Civ. Code, secs. 1146–1148.)''

The above language very clearly declares the obvious meaning of sections 1146 and 1148 of the Civil Code. There never could be any doubt that where one, possessed of a sound and disposing mind, transfers by gift or voluntarily, and without consideration, personal property to another, the title to the property so transferred as effectually vests in the donee as if it had been transferred for an adequate valuable consideration. What is really meant, though, by section 1148 in its declaration that a gift *inter vivos,* or a gift other than a *donatio causa mortis,* cannot be revoked by the giver is that, when a gift of personal property is once made, the title thereto immediately passes to the donee and that such title cannot be divested, disturbed, or menaced capriciously or at the mere whim of the donor. If the rule were otherwise, it is not inconceivable that innocent third parties, acquiring the title of the donee to property so transferred, might be subjected to irremedial wrong and injury, and it is

the policy of the law to protect and preserve the integrity of titles to property honestly and in good faith acquired. But, while this is all true, the code section last referred to does not mean that a gift may not be set aside if it transpires that it was brought about and consummated through misrepresentations and fraud.

Upon its face, the transfer in question is perfectly valid, but, as seen, the complaint alleges and the court finds that it was superinduced by the false representations of the donor to the donee, and that no consideration whatsoever passed to the donee from the donor for the transfer. And, as also shown, the complaint further alleges and the court further finds that but for the fraud and false representations practiced upon and made to the plaintiff by the defendant the former would not have executed the transfer or made the gift. If these facts be true (and on this appeal from the judgment on the judgment-roll alone the findings must be presumed to be sufficiently supported by the evidence), then upon what theory or for what possible reason may it reasonably be contended or justly declared that a court of equity is powerless to interpose the force of its remedial power to the end that the plaintiff may have restored to her, as far as it is now practicable to do so, the rights of which she has been wrongfully deprived? If, in other words, A, having been the recipient of some kindness, voluntarily conferred, of sufficient importance or magnitude to prompt him to reward voluntarily the author of the kindness with a gift of property of value, is, by the fraud or misrepresentations of B, made to believe that the latter was his benefactor in the particular matter, and so gives B a' large sum of money or other valuable personal property, is it conceivable that A, on discovering the fraud, or that it was another and not B who performed the kindness, is wholly without a remedy to right the wrong? Independently of any consideration of the inherent remedial attributes of a court of equity with respect to fraudulent and unconscionable transactions, whereby parties are wrongfully deprived of vested rights, our own law, as declared in sections 1667, 1708, 1709, 3523, and, particularly applicable to such cases as this, section 2224, Civil Code, answers the questions so propounded.

The reading of the sections above named will readily demonstrate that the legislative policy of the state is to provide. a remedy for every legal wrong, by whomsoever or upon or against whomsoever committed; and that either a husband or a wife between whom a transaction respecting property is had may avail himself or herself of the remedy thus provided where the one has wrongfully deprived the other of property is clearly emphasized by the terms of section 158 of the Civil Code, which, after declaring that transactions or engagements respecting property may be entered into by a husband or wife with the other, or with any other person, provides that where such transactions or engagements are between themselves they are subject ''to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts.'' There could be no language more plainly declaring that whatever may be the precise nature of the transaction between a husband and wife respecting property—whether it involved a conveyance or a gift *inter vivos* of property by one to the other—such transaction must be consummated in the utmost good faith and free from the taint of fraud or from the elements of mistake or undue influence, otherwise it will be set aside. Indeed, the relation of husband and wife is, in the strictest sense, a confidential one, and hence the uniform rule is that transactions between the spouses whereby one obtains property from the other are to be closely or scrutinizingly scanned, lest there may have been in the transaction some unfair or unconscionable advantage taken by reason of the relation existing between them. There can be found no just ground for a divergence of views upon these propositions, and that they apply as well to transactions involving gifts *inter vivos* as to other transactions between parties, is not only sound in principle, as we have above tried to show, but is sustained by the text-writers and the cases.

In his work on Contracts (ninth edition), volume 2, page 768, Judge Parsons says: ''We have had repeated occasion to remark that fraud avoids every contract, and annuls every transaction.''

Again, at page 782, same volume, the same author declares: ''The fraudulent party cannot himself avert his

fraud and claim as his right any advantage resulting from it. To permit him to do so would be to contradict the plainest principles of law. No man can be permitted to found any rights upon his own wrong."

In Smith on Personal Property, section 84, the rule is thus stated: "When a gift is fully executed it is irrevocable as to the parties and their legal representatives, *except for fraud, force, undue influence, or mental incapacity on the part of the donor.*" (Italics ours.)

Similarly, the rule is stated in Thornton on Gifts and Advancements, wherein it is declared in section 440 that "a gift procured or brought about by fraud or undue influence is void. The fraud or illegal influence that will avoid a gift need not be sufficient to set aside a will procured in the same way."

The same author, section 113, again says: "If a gift is brought about by fraud or undue influence, as has been elsewhere discussed, it may be revoked by the donor or his personal representative or heirs, according to the descent of the property given."

"When a gift is perfected by delivery and acceptance," says Chancellor Kent, in his Commentaries, page 440, "it is then irrevocable, unless it be prejudicial to creditors, or the donor was under a legal incapacity, *or was circumvented by fraud.*"

In *Brison* v. *Brison*, 75 Cal. 525, 529, [7 Am. St. Rep. 189, 17 Pac. 689, 691], it is said: "While it is not impossible that a gift between persons in such (confidential) relations may be valid, yet all such transactions are constructively fraudulent, and are only to be upheld on a showing of special circumstances," citing *Hatch* v. *Hatch*, 9 Ves. 296. (See, also, *Soberanes* v. *Soberanes*, 97 Cal. 140, 145, [31 Pac. 910].)

The case of *Evans* v. *Evans*, 118 Ga. 890, [98 Am. St. Rep. 180, 45 S. E. 612], closely resembles the present case in the facts. There the wife, while carrying on adulterous relations with another party, induced her husband to transfer his property to her as a gift. In an action to set the gift aside, the husband prevailed, and on appeal the court said: "There seems to be no doubt that a gift made under such circumstances will be revoked at the instance of the husband on discovery of the wife's

criminal conduct. . . . And for her to induce her husband
to convey the property to her after she had been guilty
of adultery, or in contemplation of subsequent adultery
with Thrush, was such a fraud upon the husband as to
entitle him to revocation of the gift on discovery of her
conduct.''

In *Meldrum* v. *Meldrum,* 15 Colo. 478, [11 L. R. A. 65,
24 Pac. 1083], the wife, having previously fixed upon a
determination to desert and abandon her husband, pre-
vailed upon him to give her their home, and, upon the
gift being made, she ordered him from the premises. The
husband sued to annul the gift on the ground of the fraud
of the wife in the procurement thereof, and was victorious
at the trial. On appeal, the judgment restoring the prop-
erty to the husband was sustained, the court, *inter alia,*
saying: ''She was false to her marital vows, and by fraud
procured an unjust advantage of her husband. From
such a fraud courts of equity will grant relief either by
setting aside the conveyance or by converting the offend-
ing party into a trustee of the property for the benefit
of the party defrauded.''

In *Thomas* v. *Thomas,* 27 Okl. 784, [Ann. Cas. 1912C,
713, 35 L. R. A. (N. S.) 124, 133, 109 Pac. 825, 113 Pac.
1058], the husband gave certain property to his wife, in the
absence of solicitation by her, but while she was sustaining
sexual relations with another man, of which relations the
husband was ignorant at the time he made the gift. On dis-
covering the illicit relation between his wife and the other
party, the husband instituted suit to set aside the gift, and
was awarded judgment, from which an appeal was unavail-
ingly taken. In affirming the judgment, the court said:
''In the wife's adultery the entire foundation and consid-
eration for the gift is swept away and leaves its support
void; indeed in this case the consideration was gone, the
right to care, affection, confidence, or even tolerance, every
basic consideration, had been destroyed and had no existence
when the gift was made. These things failing, the gift
failed.''

But there is no necessity for further multiplying authori-
ties upon a proposition so well settled. There is, in fact,
no divergence of views between counsel as to the sound-

ness of the principles above considered in their application to proper cases. The question on which there is any controversy simply is whether gifts *inter vivos* come within their operation, and as to this it seems to us that the code sections and the authorities above referred to conclusively answer the question in the affirmative.

[2] Indeed, from the authorities briefly reviewed herein, the proposition is clearly deducible (and upon principle the proposition as involving a sound legal rule would appear to be unimpeachable) that, even where there have been no false representations or promises by one of the spouses that the marital obligations have always been, and would always be, faithfully kept, property which has been given by one to the other will be restored to the donor upon discovery by the latter that the donee has been before or after the gift guilty of maintaining meretricious relations with a third party. In other words, the very act of unfaithfulness to the marriage vows in the particular characterizing this case itself furnishes a sufficient legal ground for vitiating the gift. In the case at bar, however, the element of actual fraud enters. The complaint and the findings and presumptively the evidence show that the defendant was by approximately twenty years the senior of the plaintiff; that he was and presumably still is a man of business experience and keen intelligence; that (inferentially, at least, from the nature of the representations and promises she exacted from her husband as a condition, if not a consideration, for the gift), she was jealous of possible attentions by him to other women, and, having been made to believe by him that he had always been and would always be during their married life true and faithful to his marital obligations, and reinforced by his persistent solicitations that she make the transfer at a time when she was contemplating a then early departure for Brazil, unaccompanied by him, she was thus moved to make the gift, but that the representations he made to her of his conduct as a husband previous to the making of the gift were untrue and his promises of future faithfulness broken. Thus we have a case where a party commits acts with intent to deceive another party, or to induce the latter "to enter into a contract" (Civ. Code, sec. 1572), or, in the language of subdivision 4 of

said section, a case where a promise has been made without any intention of performing it.

2. It must be held that, under the circumstances of this case, the complaint shows that the plaintiff, in the matter of rescinding the instruments in question, and in bringing her suit to .annul and set aside the gift, acted with reasonable diligence, or, to state the proposition in negative fashion, was not guilty of laches.

The complaint in this case was filed December 19, 1917, a trifle over a month after plaintiff's discovery of the misconduct of the defendant, and, while we think the plaintiff should have directly alleged therein the time at which she first discovered the betrayal by the defendant of his marriage vows and obligations, we are still of the opinion that, in the absence of a demurrer either upon general or special grounds, the complaint sufficiently discloses that she first acquired knowledge of the defendant's alleged duplicity on the fifth day of November, 1917. That pleading, it will be noted, declares that plaintiff had no knowledge or information concerning the adulterous acts therein charged against the defendant prior to the fifth day of November, 1917, and that she thereupon and immediately separated from the defendant, and since has not lived with defendant as his wife; that on November 9, 1917, she instituted suit for divorce from defendant, and on the twelfth day of December, 1917, having then for the first time been advised of her legal right to rescind the gift, notified defendant of such rescission. From all these averments it appears clearly enough that discovery of the alleged unfaithfulness of the defendant was made by plaintiff for the first time on the fifth day of November, 1917. Obviously, the only way discovery can be made of the existence of a fact or thing is by acquiring information or knowledge of the existence of such fact or thing, and if, where it is declared, as here, that knowledge or information has not been acquired of the existence of a fact or thing before a certain specified date, the conclusion ineluctably following from such declaration is that the knowledge or information of the existence of such fact or thing was acquired on the day thus specifically named.

To the argument that the complaint fails to disclose the requisite promptitude on the part of plaintiff in asserting her right to a rescission because it does not show

why she could not, by the exercise of reasonable diligence, have sooner discovered the alleged treachery of the defendant to his representations and promises, the learned counsel for the plaintiff, in his brief, makes a sufficient reply as follows: "A husband is presumed to be faithful and loyal—to act lawfully, not unlawfully. A wife is not encouraged or required by the law to doubt his loyalty or to be diligent in searching for possible pretexts for such doubt. The relation is confidential. She does not deal with her husband as with a stranger, but as one she can presumably trust."

[3] There are, however, other answers to the complaint that plaintiff's pleading is defective in that therein she fails to relieve herself of the imputation of laches in proceeding to have restored to her the rights of which she was wrongfully deprived by the defendant, viz.: 1. The answer does not plead laches as a defense to the maintenance of the action, and that question was, therefore, not reviewed by the trial court, "and hence should not, for the first time, be raised here. Indeed, objection to the rescission on that ground, since not pleaded, is deemed waived," citing Code of Civil Procedure, section 434 (*Tracy* v. *Smith & Mizener,* 175 Cal. 161, [165 Pac. 535]). 2. "In considering an appeal supported by the judgment-roll only, all presumptions and intendments are to be indulged favorably to and in support of the judgment. It must, in other words, be presumed that there was evidence sufficient to support the findings or the verdict, and that whatever might have properly occurred at the trial to cure the defects of the complaint in any vital particular did actually occur." (*Myers* v. *Canepa,* 37 Cal. App. 556, 561, [174 Pac. 903, 905].)

The only real objection which could be urged against the complaint here in the particulars referred to is that of uncertainty, and as to such ground of objection to a pleading, even when raised by demurrer, the following cases are instructive: *Rooney* v. *Gray Bros.,* 145 Cal. 753, 758, [79 Pac. 523]; *Dennis* v. *Crocker-Huffman etc. Co.,* 6 Cal. App. 58, 61, [91 Pac. 425].)

The judgment appears to be just, and legally impregnable, and it is, therefore, affirmed.

Prewett, P. J., *pro tem.,* and Burnett, J., concurred.