### GUARANTY TRUST CO. OF NEW YORK et al. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 311.

Circuit Court of Appeals, Second Circuit.

July 5, 1938.

Montgomery B. Angell, of New York City, and Weston Vernon, Jr., of Washington, D. C., for petitioners.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The Commissioner of Internal Revenue determined a deficiency in the estate tax of Jonathan Peterson, deceased, in the sum of $127,436.06 which was affirmed by the Board of Tax Appeals. The sole issue presented on the appeal to this court from the order of the Board is whether the Commissioner erred in refusing to allow as a deduction from the decedent's gross estate an item of $1,048,000 evidenced by twelve promissory notes executed by the decedent and payable to Henrietta J. Peterson, Trustee. The petitioners, who are the executors of decedent's will, contend that the notes represented debts of the latter which were enforceable claims against his estate deductible under the provisions of Section 303(a) (1) of the Revenue Act of 1926, 26 U.S.C.A. § 412 note. Those provisions allow as deductions in computing net taxable estate " * * * claims against the estate, * * * to the extent that such claims, * * * were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth * * * ".

The deduction represented by the notes was disallowed by the Commissioner on the ground that the petitioners had failed to show that the obligations represented by the notes were contracted bona fide and for an adequate and full consideration in money or money's worth. After the decedent's death the twelve notes were paid by his executors and the payments were allowed by the Probate Court of Connecticut in their accounts. The decedent had regularly paid interest on the notes during his lifetime and claimed and was allowed the interest payments as deductions in his income tax returns.

The history of the notes is as follows:

On July 17, 1924, when coming into dinner, Jonathan Peterson, who was president of and a large stockholder in the United States Tobacco Company, said to his wife: "My dear, I have a gift for you". She said: "I don't want it. What will I do with it?" They then talked a little about it and he said, to use his own words: "Go out and treat yourself. It is yours. Blow it. Do what you want to do with it". She testified that there were no strings tied to the gift, that her husband did not require her to do anything with it, but said "it was for me to do with it as I pleased"; that, in connection with her re-

mark: "I don't know what to do with it. How shall I invest it", there was talk about his sisters and he said: "You can make a trust to provide for them, as I have been doing", and added that Mrs. Peterson could create one for herself. Some time during the evening he delivered to his wife two checks, one for $225,000 and one for $15,000. She testified that during the same evening it was arranged between her husband and herself that two trusts should be set up with the proceeds of the checks, one for $200,000 for the benefit of Mrs. Peterson, to whom he had been generous in his gifts and allowance, and who had no income from any other source, and one for $40,000 for the benefit of Mr. Peterson's two sisters, to whom he had previously been making regular contributions. It was also arranged that the money was to be loaned back by the trustee to Mr. Peterson, who, in return for the loan, was to give notes payable in ten years with interest at the rate of 6%. He said to Mrs. Peterson: "I will give you as much as you can get anywhere else on the money as an investment."

On July 18, 1924, Mrs. Peterson deposited two checks in her personal account in the Guaranty Trust Company and the checks were credited to her account that day and were duly paid. The check for $15,000 was drawn by Mr. Peterson on July 17, 1924, on the Guaranty Trust Company against a balance of $31,428.31 and the check for $225,000 was drawn on the National City Bank composed of a previous balance of $5,366.31 and the proceeds of a demand loan made from that bank on the same day of $225,000. This last check was certified on July 17, 1924. He paid gift taxes on the amount of the checks delivered to his wife.

On July 18 Mrs. Peterson executed a formal trust instrument with elaborate provisions covering eight printed pages in the record in which she granted to herself as trustee $40,000 for the life use of Mr. Peterson's sisters and $200,000 for her own life use with certain remainders over. On the same day Mrs. Peterson drew her own checks for $40,000 and $200,000 to her order as trustee and deposited them in the trustee account. It was provided in the trust instrument that in making investments the trustee should not be confined to the usual legal investments for trustees, but was to be at liberty to make other investments and "to lend the whole or any part of the funds of said trust estate to any person or persons upon such terms and conditions and either with or without security as the * * * trustee shall in her * * * discretion determine and the said trustee * * * shall not be liable or accountable for any depreciation in the value thereof."

On July 25, 1924, Mrs. Peterson as trustee issued her checks to Mr. Peterson in the respective sums of $40,000 and $200,000 and received from him two notes for like amounts due July 25, 1934. On July 26, 1924, he deposited the trustee checks aggregating $240,000 to his own credit and on July 26, 1924, paid off his demand note to the National City Bank plus interest.

There were three other transactions similar to the one above outlined.

### The May, 1926 Transaction.

On May 14, 1926, Mr. Peterson issued his check to his wife for $200,000 drawn on the National City Bank against a balance of $202,151.86 composed of a previously existing balance of $2,151.86 and the proceeds of a demand loan from the bank made on the same date of $200,000. This check was deposited in Mrs. Peterson's personal account on May 17, 1926, and paid on that date. On May 21, 1926, she executed two trust instruments similar in form to the one involved in the transaction of July 18, 1924, in favor of each of her two children and conveyed to herself as trustee thereunder moneys derived from the transfer to her by her husband of $200,000. On May 21 as trustee she issued to her husband a check for $200,000 and received from him his two notes for $100,000 each due May 21, 1936. He deposited this check to his own credit on May 22, 1926, and on that day paid off the demand loan of $200,000 plus interest to the National City Bank.

### The June, 1926 Transaction

On May 25, 1926, Mr. Peterson issued his check to his wife for $200,000 drawn on the National City Bank against a previous existing balance of $602.26 and a demand loan made on the same date of $200,000. The check was deposited to the personal credit of Mrs. Peterson in the Guaranty Trust Company on May 27, 1926, and was paid on that date. On June 2, 1926, Mrs. Peterson executed two instruments similar in form to the trust instru-

ment of July 18, 1924 granting to herself as trustee two trust funds of $100,000 each in favor of each of her two children. These funds were paid from her account out of the $200,000 transferred to her by her husband by his check of May 25, 1926. On June 2, 1926, Mr. Peterson gave his two notes to his wife as trustee, each for $100,000 dated June 2, 1926, and due June 2, 1936, and received from her out of her trustee account two checks to his order in the sum of $100,000 each which he deposited to his own credit. With the proceeds he paid off the demand loan, plus interest, on June 3, 1926.

### The April, 1928 Transaction

On April 13, 1928, Mr. Peterson issued his check on the National City Bank to his wife for $408,000. The balance in bank to his credit on that date was $411,399.28. He had a previously existing balance of $6,399.28 and added to it $340,000 from the proceeds of sale of 4000 shares of United States Tobacco Company and also a check on his account with the Guaranty Trust Company of $15,000 and the proceeds of a demand loan from the National City Bank of $50,000. The check for $408,000 was deposited in Mrs. Peterson's personal account in the Guaranty Trust Company on April 16, 1928. On April 23, 1928, she executed an instrument similar in form to the prior trust instruments whereby she granted to herself as trustee funds aggregating $408,000 and created trusts as follows: One in her own favor for $100,000; one in favor of her daughter for $100,000; one in favor of her son for $100,000; one in favor of one of Mr. Peterson's sisters for $40,000; one in favor of his other sister for $48,000, and one in favor of his cousin for $20,000. In order to create the trust funds she deposited $408,000 on April 23, 1928, in her trustee account. On the same date she gave her check as trustee to her husband for that amount and he delivered to her his six notes dated April 23, 1928, due April 23, 1938, and corresponding in their several amounts with the respective trust funds. On April 25, 1928, Mr. Peterson paid off the $50,000 demand note and interest to the National City Bank.

At each time notes were delivered Mr. Peterson assigned stock of the United States Tobacco Company as collateral thereto in sufficient amounts to protect the notes, and notes and collateral were kept by Mrs. Peterson in her individual safe deposit box and were held for her account as trustee.

The case was reviewed by the whole Board of Tax Appeals. The majority reached the conclusion that the evidence showed lack of intention on Mr. Peterson's part to divest himself of complete dominion over the funds transferred to his wife and that the deposit of them in the trusts and their subsequent return to him in the form of loans was pursuant to an agreement between himself and his wife that the funds were to be used in only one way, i. e., to set up trusts and then to be returned to him. The prevailing opinion added that the transaction of July 17, 1924, was a pattern for the subsequent transactions which on three later occasions—two in the same year—were carried out under the same terms and pursuant to like agreement. Accordingly it was held that the notes were not given for full consideration in money or money's' worth and the claims based upon them were not deductible under Section 303(a) (1) of the Revenue Act of 1926.

Six members of the Board dissented on the ground that Mr. Peterson gave his wife the gifts unconditionally relying on the return of them to him as loans, not upon any agreement on her part, but wholly upon her lending in the exercise of her absolute discretion.

The question is whether gifts were completed before the agreements that the moneys should be loaned to Mr. Peterson were made. If such was the case, and full legal and equitable rights in the moneys passed to Mrs. Peterson individually and thereafter to her as trustee of the various trusts, the trust estate furnished "full consideration in money or money's worth" for the notes upon which the claims which the taxpayer seeks to deduct rest. Judson v. Hatch, 171 App.Div. 246, 157 N.Y.S. 182; Matter of Hendricks' Estate, 163 App.Div. 413, 148 N.Y.S. 511; Stewart v. Whittemore, 3 Cal.App. 213, 84 P. 841. On the other hand, if the checks and proceeds reached Mrs. Peterson upon the condition or under the agreement that there should be loans of identical amounts to her husband by the trusts which she was to set up there were not completed gifts but only a circulation of funds from Mr. Peterson, or his banks, to his wife, from her

individually to herself as trustee, from her as trustee to him, and from him back to his banks to restore his accounts and wipe out his borrowings in cases where he borrowed in order to carry out the various transactions. If, because the transfers to Mrs. Peterson were conditioned upon loans to her husband, the trusts were not in fact furnishing the moneys, which came only from his own funds, the corpus of each trust would consist wholly of a note of Peterson that was no more than an unenforceable gratuitous "promise to make a gift," based upon neither money nor money's worth. Johnson v. Commissioner, 2 Cir., 86 F.2d 710, 713; Holmes v. Roper, 141 N.Y. 64, 36 N.E. 180. American Law Institute, Restatement Trusts § 26.

Counsel for the taxpayer argue that the husband first made a completed gift and only afterwards was it arranged that trusts should be set up and loans made to him out of the proceeds of the checks. We think, however, that the Board was justified in finding that all the steps taken were component parts of single transactions. They followed one another closely and the entire arrangement was agreed upon. The more Mrs. Peterson's testimony is read the more apparent it becomes that there was no clear separation of the discussion culminating in the alleged gift and the discussion about setting up the trusts and lending the money back to her husband. In the first place "when he came in to dinner" he only told her that he had a gift for her. It does not appear whether he turned over the checks to her then or later in the evening. Both the suggestion that she set up the trusts and the suggestion that she lend the corpus to her husband were made that evening and each suggestion came from him. Moreover, he must have made all the plans and arranged for the drafting of the trust deed previously, for the deed was executed the day following the conversation, was of considerable length and contained elaborate provisions. It is most unlikely that a lawyer would have been employed to draft the deed, would have drafted such an instrument and would have had it executed in a single day without any previous notice. Such trusts require consideration and revision and are not likely to be ordered, completed

and executed within so short a period and there is no proof of urgency or haste.

In addition to all this the numerous subsequent alleged gifts and loans made in the following years where the funds of the husband were transferred to his wife and used shortly afterwards for advances to himself deprive the transactions of reality. Such a succession of events indicates strongly that the transfers were never intended to be gifts but were mechanisms to serve as a means of giving the husband tax deductions without really parting with the control of his money. While he doubtless believed that he successfully avoided liability and that his position was immune, his belief depended on a mistake of law and did not furnish a basis for a deduction of the amount of his notes in computing estate taxes, because the only consideration for the notes was his own money.

The taxpayer had the burden of proof and the questions before the Board were questions of fact. For the reasons we have stated we are of the opinion that there was a substantial basis for the finding that the alleged gifts had no reality and for treating the decision as coming within Johnson v. Commissioner, 2 Cir., 86 F.2d 710. That decision, upon the facts found, governed the result reached.

Counsel for the taxpayer further contend that the acceptance by the government of the gift taxes and its allowance of interest payments on the notes as deductions in Mr. Peterson's income tax return estopped it from questioning the reality of the gifts. There could be no estoppel in the present case even if one were ever possible against the government because it had accepted payment of taxes that were theoretically inconsistent with a liability for others. Here there is no reason to suppose that the government officials knew anything about the circumstances under which the alleged gifts were made or that they did more than take the representations of the taxpayer that he had made gifts and was liable for taxes thereon, at their face value. Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791. See, also, 49 Harv.L.Rev. 1281, at 1299 et seq.

Order affirmed.