## PRESTON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 85.

Circuit Court of Appeals, Second Circuit.

Dec. 31, 1942.

Allin H. Pierce, of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Irving I. Axelrad, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The question presented is whether the petitioner in computing his taxable net income for the year 1937 is entitled, under section 23(b) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 23(b), to deduct as "interest paid * * * on indebtedness" payments made on a bond under seal by which he acknowledged himself indebted to United States Trust Company of New York as trustee in the sum of $125,000 and covenanted to pay said sum on October 15, 1954 with interest thereon at 4 per cent. per annum payable in quarterly instalments beginning on December 15, 1934.

Because of circumstances which need not be detailed, the petitioner, with commendable generosity, desired to set up a trust for the benefit of his sister-in-law, Alice, the widow of his deceased brother Jerome. On October 18, 1934, he borrowed $125,000 from a bank and delivered it to the United States Trust Company as trustee to be held pursuant to the terms of a trust indenture executed by him on the same date. The income of the trust was to be paid to Alice, with limitations over in case of her death or remarriage. The trustee was given broad powers of investment and was expressly authorized in its absolute discretion from time to time to loan money to the settlor on his unsecured note or bond maturing in not more than twenty years. On October 19, 1934 the settlor delivered to the trustee his bond under seal for $125,000 and interest, as above described, and received the trustee's check for $125,000, which he endorsed to the bank from which he had borrowed the same sum the day before. He also paid the bank $20.83 as interest on the demand loan for one day. On December 15, 1934 and quarterly thereafter, the petitioner caused the interest payments required by his bond to be made to the trustee It entered the payments as "interest" on the cash receipts and disbursements account which it kept for the trust, and it filed a fiduciary income tax return for the year 1937 showing receipt during the year of $5,000 as interest, the expenditure of $125.25 for commissions and expenses, and the distribution of the balance to the life beneficiary. For the year 1934 the petitioner filed a gift tax return in which he reported a gift of $125,000 to United States Trust Company as trustee, and paid the gift tax so reported.

In the opinion of the Tax Court, 44 B.T.A. 973, the basic question was whether or not the petitioner's bond was a legally enforceable obligation, and the conclusion was reached that it was unenforceable either by the trustee or the beneficiary. On the strength of later cases the Commissioner now concedes that the Tax Court erred in its view of the applicable New York law relating to a covenant under seal.* His present contention is that the

---

* United States Trust Co. v. Frelinghuysen, 288 N.Y. 463, 43 N.E.2d 492; United States Trust Co. v. Preston, 264 App.Div. 152, 34 N.Y.S.2d 646. The latter case involved the enforceability of the identical bond under consideration in the case at

decision should be affirmed on the theory that the payments made as interest were not "interest on indebtedness" within the meaning of the tax law but were gifts, which the bond obligated the petitioner to make on the designated "interest" dates.

Under the findings of facts and opinion of the Tax Court we must take it that the "loan" by the trustee cannot be deemed consideration for the petitioner's covenant to pay the trustee $125,000 on October 15, 1954 and 4 per cent. annual interest before maturity. While the findings of fact as such do not include a finding that the trustee agreed on receipt of the money to lend it immediately to the petitioner, the opinion states that this is the only reasonable inference to be drawn from the steps taken and the carefully drafted provisions of the trust indenture. We cannot say that such inference is wholly unsupported by the evidence. Generally, loans by the Trust Company as trustee required approval by its investment committee. There is no proof that the committee functioned as to the loan in question, and the time element was so short that it is probable it did not. Failure to procure action by the committee is difficult to explain unless the trustee had already agreed to make the loan. If it had so agreed, the settlor never lost control of the sum he turned over to the trustee and, except for the seal, the case would fall exactly within our decision in Johnson v. Commissioner, 2 Cir., 86 F.2d 710. See also Guaranty Trust Co. v. Commissioner, 2 Cir., 98 F.2d 62. We therefore accept the Tax Court's view that "the practical effect of what was done was to set up a trust composed solely of petitioner's bond."

In Commissioner v. Park, 3 Cir., 113 F.2d 352 it was held, with Judge Biggs dissenting, that payment of interest on a gratuitous demand note, enforceable because under seal, entitled the obligor to interest deductions under the Revenue Acts of 1932 and 1934, whose provisions on this subject were identical with those of section 23(b) of the 1936 Act. The Commissioner attempts to differentiate the Park case because there the note was payable on demand while here maturity is deferred. He argues that payments made for the creditor's forbearance to demand immediate payment of the Park note could be deemed "interest," while here there has been no forbearance since the petitioner's note is not yet due. So far as forbearance is concerned we cannot see that it makes any difference whether the obligor bargains for a fixed forbearance or merely gets it de die in diem through grace of the creditor. The statutory language, "interest on indebtedness" does not justify the attempted distinction. So we regard the issue here the same as in the Park case, namely, whether the statutory phrase should be construed to include periodic payments agreed to be paid as interest on an enforceable, though gratuitous, promise to pay a principal sum of money to the obligee.

A majority of the court believes that case to have been correctly decided. The words "interest on indebtedness" should be accorded their usual, ordinary and every day meaning. See Old Colony R. Co. v. Commissioner, 284 U.S. 552, 561, 52 S.Ct. 211, 76 L.Ed. 484; Deputy v. Du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416. We think that the ordinary business man would consider an enforceable obligation to pay money on demand or at a fixed future date as an "indebtedness," whether the obligation were created in exchange for a valuable consideration or gratuitously, and that periodic payments agreed to be paid as interest thereon are properly described in common parlance as payments of "interest on indebtedness." While it may be possible to view the petitioner's bond as an obligation to make a series of annual gifts of $5,000 and a gift of $125,000 in 1954, such a concept seems to us as esoteric as the "effective interest" concept which the Supreme Court rejected in the Old Colony case, supra. When a donor transfers as a gift the bond of a third person, we do not view the annual interest payments thereon as a series of gifts reduced to possession by the donee in the year of receipt, and we see no reason why this should be the view when the donor gives his own legally enforceable bond. His gift is complete when the bond is delivered whether his own obligation or another's is the subject of the gift. Nor do we see any valid reason for supposing that Congress wished to restrict the meaning of "indebtedness" to that contracted "for an adequate and full consideration in money or money's worth." Where that was its intent Congress expressly so stated.

bar. After the ruling of the Tax Court the petitioner declined, for the protection of his rights, to make further payments of interest, and the trustee successfully brought suit to collect them.

See Section 303(a)(1) Revenue Act of 1926; section 812 Int.Rev.Code; Guaranty Trust Co. of New York v. Commissioner, 2 Cir., 98 F.2d 62.

■ It is urged that the purpose of section 23(b) was to grant a credit against gross income for the expense of borrowing money to beget income, but we find no justification for so limiting it. Interest paid on a mortgage given for the purchase of a dwelling house is no less a permissible deduction than interest on a loan for business purposes. We cannot doubt that interest paid on money borrowed to make a gift is an allowable deduction. In practical effect what the petitioner did was to shift to the Trust Company as trustee the right to interest payments which he would otherwise have been obliged to make to the bank from which he had borrowed.

The order of the Tax Court is reversed.

L. HAND, Circuit Judge (concurring).

If the transaction between Preston and the trustee had been such that if Preston had changed his mind after giving the trustee the cheque and had refused to give the bond, the trustee would have still been obliged to return the money, I think I should have said that the payments were not interest. But I do not so understand the facts, nor did the Appellate Division so understand them in United States Trust Co. v. Preston, 264 App.Div. 152, 34 N. Y.S.2d 646. Although the trustee had agreed to lend the money in exchange for the bond, Preston could not have reclaimed it without executing the bond, and the trustee would have been liable to the beneficiaries if it had returned the money gratis: being bound to lend is not being bound to give. Hence it seems to me that the transaction was like any other loan and that the interest was interest in the strictest sense.

Moreover I do not see how such a transaction could ever be made the means of tax evasion. If Preston had used as the trust res the securities, on whose pledge he raised the money in the first place, he need not have included any interest or dividends accruing upon them in his income tax; the beneficiary would have paid the tax. If the trustee—being authorized in its discretion to lend the money to Preston, but not being bound to do so—had nevertheless chosen to lend it to him, any tax on the interest would also have been payable by the beneficiary and Preston could certainly have deducted

it. It would have been deductible as part of the cost of obtaining whatever profit he might make by using the borrowed money. The only gift would have been made when the money was put where Preston had to execute the bond to get it back. Nor do I see why the result should be different because the trustee was bound to lend the money in exchange for the bond; any more than if its discretion in investing had been limited in any other way. If the interest reserved had been higher than Preston had any bona fide expectation of earning on the money, it would have been pro tanto a colorable device merely to make gifts, but there is no suggestion of anything of that kind. For these reasons I concur.