PETER MUSERLIAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Muserlian v. Commissioner
Docket Nos. 19882-86; 19906-86; 48578-86
United States Tax Court
T.C. Memo 1989-493; 1989 Tax Ct. Memo LEXIS 496; 58 T.C.M. (CCH) 100; T.C.M. (RIA) 89493; September 7, 1989
Joseph W. Mooney, III *498 , and Joseph R. Burcke, for the petitioners. James A. Kutten, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal gift and income taxes for the following taxable periods: Taxable
Addition
Docket
Quarters
Deficiency in
to Tax
Petitioner
Number
Ended
Gift Tax
Sec. 6651(a)(1) [2]
Peter Muserlian
[3] 19882-86
6/30/81
$ 116,562.00
$ 29,140.50
12/31/81
5,735.00
--
Docket
Taxable
Deficiency in
Petitioner
Number
Year
Income Tax
Peter Muserlian and
19906-86 [4]
1981
$ 45,724.07
Theodora Muserlian
1982
67,850.56
Peter E. C. Muserlian
48578-86
1982
2,338.00
*499 The issues for our decision are: (1) Whether Peter and Theodora Muserlian are entitled to deduct $ 13,250 and $ 14,750 for the taxable years 1981 and 1982 as interest paid with respect to a bona fide indebtedness; and (2) whether Peter Muserlian sold for Federal income tax purposes a 24-percent partnership interest in Upper New York Realty Company to T. E. Associates, a partnership. If we find the sale to be bona fide for Federal income tax purposes, then we must decide: (3) Whether the fair market value of the 24-percent interest in Upper New York Realty Company exceeded the present value of a note from T. E. Associates resulting in a part sale/part gift; and (4) whether Upper New York Realty Company's election to step up the basis of its assets for the incoming partner T. E. Associates, is overstated. FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Peter Muserlian (petitioner) and Theodora Muserlian (collectively referred to as petitioners), as husband and wife, resided in Fayetteville, New York, at the time they filed their petition in this case. *500 Their son, Peter E. C. Muserlian, resided in Syracuse, New York, at the time he filed his petition in this case. Beginning in 1974, petitioner began making purported gifts by issuing checks payable to five of his six children and a son-in-law (donees). At that time, one of the five children was a minor, but, as of the date of this trial all are adults. The purported gifts were made on the donees' birthdays and at Christmas and ranged in amounts of $ 500 to the most common amount given of $ 5,000. In many instances, petitioner would transfer two checks to a donee, one in the amount of $ 500 or $ 1,000 which the donee would keep, and one in the amount of $ 5,000 which the donee would transfer back to petitioner in the form of a loan. [5] Each loan occurred near in time after the gift. On at least one occasion, petitioner's request for a loan was denied by a donee. Subsequent to receiving the proceeds of the loan, petitioner executed and delivered a promissory note, payable on demand, which bore interest at 6 percent per year. Demand for payment was made in 1977 on two notes and the remaining demand notes were voluntarily paid off in 1987. Petitioner timely made all interest payments *501 on the notes when due. Although petitioner anticipated that he would request a loan from a donee subsequent to making a purported gift, there was no prearranged plan between petitioner and the donees that the funds given to the donees would be lent back to petitioner. Petitioner used the proceeds of the loans to fund additional transfers in the form of gifts; however, there was never an occasion where a loan was made prior to the receipt of funds by a donee. Upper New York Realty Company is a New York general partnership which owns a shopping center in the Syracuse, New York, metropolitan area known as "Shop City." Prior to June 30, 1981, the partners of Upper New York Realty Company were as follows: In June of 1981, Peter Muserlian and Theodora Muserlian, and five of their adult children, Margaret M. Mooney, Patricia A. Golding, Donna E. Dixon, Joan Cavazuti, and Peter E. C. Muserlian formed a partnership known as T.E. Associates. A partnership *502 agreement was executed by them. Theodora Muserlian had a substantial asset portfolio in her own right, apart from Peter Muserlian. Petitioner Peter Muserlian structured the partnership so that his wife, Theodora Muserlian, owned 79 percent of the partnership with the balance owned equally by their five children. Thus, the transaction was structured so as to give her a large interest in T.E. Associates in view of her portfolio size in relation to the children's asset portfolio. T.E. Associates was organized, in part, to acquire an interest in Upper New York Realty Company. The ownership of T.E. Associates reflected Peter Muserlian's wish that a substantial portion be owned by Theodora Muserlian with the balance owned equally by their five children. This arrangement was understood by most of the partners of T.E. Associates. On June 18, 1981, Peter Muserlian and Patricia A. Golding, a partner in T.E. Associates acting on behalf of T.E. Associates, executed an Agreement of Purchase and Sale (Agreement) whereby T.E. Associates purchased a 24-percent partnership interest in Upper New York Realty Company (partnership interest). In the Agreement, Peter Muserlian agreed to sell the *503 partnership interest to T.E. Associates in exchange for a promissory note (note) in the amount of $ 2,400,000. Thereafter, on June 30, 1981, T.E. Associates tendered to Peter Muserlian the promissory note of $ 2,400,000. Upon the insistence of Peter Muserlian, the Agreement provided that in the event of a default on the promissory note by T.E. Associates, Peter Muserlian would be entitled to reclaim ownership of the partnership interest in Upper New York Realty Company. Petitioner was aware of the tax savings to him in selling the partnership interest although he was not motivated solely by tax avoidance in such a sale. His primary motivations in selling the partnership interest included the following: (1) His wish to withdraw for health reasons from some of the day-to-day management of Shop City; (2) his wish that his son, Peter E. C. Muserlian, would assume management of Shop City; (3) his wish to continue his family's ownership of at least a portion of Shop City; (4) his wish to afford his family an opportunity to profit from an investment in Shop City; and (5) his wish to obtain for himself a note yielding an interest amount which would be a defined sum fully payable to him *504 at maturity. Subsequent to this sale, the ownership interests of Peter and Theodora Muserlian and their children were as follows: The terms of the sale of the partnership interest were determined by Petitioner Peter Muserlian. In setting the terms of the sale, petitioner attempted to approximate the terms of the transaction as they would be at arm's length. The partners of T.E. Associates understood that petitioner was knowledgable and experienced in real estate matters due to the years of experience during which he acted for his own account in such matters as well as acting on behalf of clients as an attorney. Peter Muserlian expressed his belief to his children that the purchase of the partnership interest was a "solid deal." Petitioner ascertained the face of the note to equal what he believed to be the value of the interest in Upper New York Realty Company being acquired by T.E. Associates. In so doing, petitioner knew that the prior year's distributions from Shop City via Upper New York Realty Company for a 24-percent interest was $ 144,000. Dividing this figure by the interest rate he intended to use in the note, 6 percent, petitioner *505 arrived at the sales price, as reflected by the note. At that time, it was his belief that the value of the promissory note was approximately equal to the value of the 24-percent partnership interest. The note called for monthly payments of interest of 6 percent per annum, and the principal was payable in two installments of $ 1,200,000 due on June 30, 1993, and $ 1,200,000 due on January 31, 1994. T.E. Associates has timely made all payments to Peter Muserlian as called for according to the terms of the note. The discounted value of the note issued by T.E. Associates on June 30, 1981, was $ 1,215,984. G. Richard Kelley, an appraiser located in Syracuse, New York, appraised the 24-percent interest in Upper New York Realty Company as well as Shop City shopping center and prepared a written report dated February 22, 1988. In his report he estimated the present value of Shop City to be $ 7,900,000 and the value of the 24-percent partnership interest to be $ 1,283,000 as of June 30, 1981. Although Peter Muserlian remained involved in the operation and management of Upper New York Realty Company he phased out this activity over time. Petitioner had no signature authority over *506 any bank account of T.E. Associates. Although Peter Muserlian sometimes advised his wife, Theodora Muserlian, he did not exercise any control over her regarding her position or her interest in T.E. Associates. Peter E. C. Muserlian and Theodora Muserlian were the only partners having signature authority over the bank account of T.E. Associates. Prior to June 30, 1981, Peter Muserlian and his partner, Michael Falcone, would consult with each other concerning matters affecting Shop City, but Peter Muserlian's son, Peter E. C. Muserlian, had little, if any, involvement in Upper New York Realty Company or Shop City. Consistent with Peter Muserlian's intent in selling his partnership interest, Peter E. C. Muserlian's participation in Upper New York Realty Company steadily increased subsequent to the sale of the partnership interest. Petitioner was confident that Peter E. C. Muserlian, his only child residing in Syracuse, New York, and a licensed real estate salesman, would be able to take over the duties that petitioner was executing at the time. After Peter Muserlian sold his partnership interest, Peter E. C. Muserlian came to be included in the discussions and consultations concerning *507 the Shop City property and its management. T.E. Associates filed a Business Certificate for Partners with the Onondaga County Clerk's Office in Syracuse, New York. There was also filed an Amended Business Certificate for Upper New York Realty Company reflecting T.E. Associates' admission as a partner to such. After June 30, 1981, T.E. Associates was reflected on the books and tax returns of Upper New York Realty Company as a 24-percent partner. Peter Muserlian's partnership interest was reduced by 24 percent. Thereafter, T.E. Associates was recognized and accounted for as a 24-percent partner in Upper New York Realty Company. Subsequent to the purchase of the partnership interest, T.E. Associates was allocated its pro rata 24-percent share of Upper New York Realty Company's income and losses and received its 24-percent share cash distributions. In arriving at T.E. Associates' share of Upper New York Realty Company's taxable income and its 24-percent share of cash distributions, T.E. Associates was charged with its pro rata 24-percent share of all of Upper New York Realty Company's expenses including property taxes. In December, 1981, the partners of Upper New York Realty *508 Company, including the partners of T.E. Associates, were sued for $ 250,000 by an individual who claimed to have been injured in a loading dock accident at Shop City. The partners of Upper New York Realty Company, which included T.E. Associates, were represented in this matter by Upper New York Realty Company's insurer. For T.E. Associates' taxable year ended December 31, 1981, and for subsequent periods, T.E. Associates reported interest deductions for payments of interest on the note and for depreciation deductions resulting from the optional basis adjustment. These deductions caused T.E. Associates to realize losses from its investment in Upper New York Realty Company for the taxable years 1981 and 1982. The partners of T.E. Associates have reflected their pro rata share of these losses flowing through to them for the taxable years 1981 and 1982. Consistent with his sale of the partnership interest, Peter Muserlian reported as income the interest payments received by him under the terms of the note. Upper New York Realty Company filed a section 754 election with its timely filed U.S. partnership return for its taxable year ended December 31, 1981. The election under sections *509 743(b) and 754 reflects the following: Stepped-up
Description
Basis
Basis
FMV
Land
$   294,972.93
$  1,005,000.00
$   720,000
Buildings
3,001,612.60
10,711,544.00
7,180,000
Misc. Assets
49,151.26
31,717.78
--   Total
$ 3,355,736.79
$ 11,748,261.78
$ 7,900,000
In docket No. 19906-86, the Commissioner determined that the interest deductions of $ 60,928.46 and $ 40,956 shown on petitioners' Peter and Theodora Muserlian joint Federal income tax returns for the taxable years 1981 and 1982 should be reduced by $ 13,250 and $ 14,750, respectively, as it was not established that the amounts were interest on bona fide debt. As a result, the Commissioner increased petitioners' taxable income $ 13,250 for 1981 and $ 14,750 for 1982. In addition, the Commissioner determined that Petitioner Peter Muserlian had not in substance sold a 24-percent interest in Upper New York Realty Company to T.E. Associates. The Commissioner disallowed all items of income, loss, and deductions with respect to the 24-percent interest in Upper New York Realty Company and included them in petitioners Peter and Theodora Muserlian's income. As a result of these *510 adjustments in docket No. 19906-86, the Commissioner determined deficiencies in petitioners' Federal income tax in the amount of $ 45,724.07 and $ 67,850.56 for the taxable years 1981 and 1982, respectively. The Commissioner alternatively determined that if it is ultimately decided that T.E. Associates was the true owner of the 24-percent interest in Upper New York Realty Company for Federal income tax purposes, T.E. Associates improperly valued their 24-percent interest in Upper New York Realty Company such that the fair market value of the 24-percent interest in Upper New York Realty Company acquired by T.E. Associates exceeded the present value of T.E. Associates' promissory note. Thus, the Commissioner alternatively determined that the transaction was a part sale/part gift, resulting in gift tax deficiencies. As a second alternative determination in docket No. 19906-86, the Commissioner determined that if it is ultimately decided that T.E. Associates was the true owner of the 24-percent interest in Upper New York Realty Company for Federal income tax purposes then the stepped-up basis of the depreciable assets for the purpose of Upper New York Realty Company's election under *511 section 754 should be $ 4,455,322 rather than $ 10,743,262. [6]
In docket No. 48578-86, the Commissioner determined a deficiency in Peter E. C. Muserlian's Federal income tax for the taxable year 1982 in the amount of $ 2,338. The Commissioner determined that Peter E. C. Muserlian's distributive share of the loss from T.E. Associates was zero in lieu of $ 5,664 as reported on his Federal income tax return for the taxable year 1982 and, therefore, increased his taxable income in the amount of $ 5,664. OPINION Issue 1. Interest Paid on Bona Fide Indebtedness
In deciding whether a debtor-creditor relationship exists between petitioner and his five children and son-in-law giving rise to interest deductions to petitioners, we must decide whether petitioner made completed gifts for Federal income tax purposes. Under the law of the State of New York by which the legal effect of the transactions here involved is to be governed, *512 Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967), the requisite elements for a valid inter vivos gift are: (1) The intent of the donor to make a gift, (2) delivery pursuant to such intent to the donee, and (3) acceptance on the part of the donee. Matter of Szabo, 10 N.Y.2d 94, 176 N.E.2d 395, 217 N.Y.S. 2d 593 (1961). As respondent has agreed in his Answer as well as at trial that there was delivery and acceptance with respect to each transfer, we must decide whether petitioner intended to make a gift. Section 163(a) allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." For interest to be deductible, a genuine indebtedness must exist in substance and not merely in form. Knetsch v. United States, 364 U.S. 361 (1960). Transactions that take place within the family which give rise to the interest deductions require strict scrutiny. Brown v. Commissioner, 25 T.C. 920 (1956), affd. 241 F.2d 827 (8th Cir. 1957); Mercil v. Commissioner, 24 T.C. 1150 (1955). *513 In a case analogous to the instant one a taxpayer created a trust for her daughter by transferring a check for $ 300,000 to herself and to her husband as trustees. Three days later, as prearranged, the trustees gave the taxpayer a check for $ 298,000 in exchange for an unsecured demand note at 6-percent interest. We held that the taxpayer was not entitled to a deduction for interest paid to the trust on the note, the trust being a conduit for the taxpayer to claim interest deductions on money lent to herself. Elbert v. Commissioner, 45 B.T.A. 685, 690 (1941). In the instant case, however, petitioner as well as his five children and son-in-law testified that there was no agreement between them that any amount of money would be lent back to petitioner. We have no reason to doubt the veracity of their testimony. Even though, in the instant case, no prearranged plan existed between petitioner and the donees, we are not required to make a finding of a completed gift. The existence of a prearranged plan is merely one element that has been repeatedly applied to invalidate a purported gift. Guaranty Trust Co. v. Commissioner, 98 F.2d 62 (2d Cir. 1938); *514 Elbert v. Commissioner, supra.Furthermore, in Elbert the issue was not whether the taxpayer demonstrated donative intent, but rather, whether the taxpayer "retained all the valuable incidents of ownership, control, and enjoyment of the funds while making the semblance of a gift"; that is, whether the taxpayer relinquished dominion and control over the property so as to make effective delivery. Elbert v. Commissioner, supra at 689. Subjecting the transactions to the strict scrutiny which they merit convinces us that the children and son-in-law served as a convenient conduit for petitioner to generate interest deductions by injecting $ 5,000 into a circular flow of money between petitioner and the donees. The exhibits presented at trial demonstrate that petitioner frequently transferred two checks to each donee. One check in the amount of $ 500 or $ 1,000 would invariably be kept by the donee while the second check, in the amount of $ 5,000, would be transferred back to petitioner in a transaction cast as a loan. Although, as petitioner testified, the exhibits presented at trial are not exhaustive of all of the transactions that *515 have occurred since 1974, petitioners have failed to produce any evidence whatsoever demonstrating that the other transactions not represented by the exhibits differ in any material respect. In addition, each loan was made shortly after the purported gift and never before it. Finally, with the exception of the demand made for payment of two notes in 1977, petitioner voluntarily paid off all of the demand notes in 1987. Petitioner structured each transaction with the intent of making a gift of the smaller amount, when a smaller amount existed, while anticipating that the larger amount, most commonly $ 5,000, would be immediately transferred back to him enabling him to make further gifts. Petitioner's testimony reflects this conclusion. Q With regards to these loans you requested from time to time from your children, more often than not, what did you do with the loan proceeds? A Many times, it would be the basis for being able to make another gift. Q So, you were able to make a lot of gifts to a lot of kids by moving, in essence, moving the same $ 5,000 from one to another? A Well, I think in the early stages that was probably so, but later on I was able to handle more than *516 one $ 5,000 gift. * * * Q Why did you borrow money from your children? A I believe I testified to that. That was initially to enable me to make further gifts to other children. Q And you[r] gifts were made in anticipation of receiving a loan back from them? A Yes. Petitioner never formulated a donative intent to complete the gift to each donee with respect to the transferred amounts that were later lent to petitioner. As a result, the loan from a donee to petitioner of money received by a donee as a purported gift from petitioner is not a genuine indebtedness. Petitioners Peter and Theodora Muserlian are, therefore, not entitled to deduct $ 13,250 and $ 14,750 as interest expense for the taxable years 1981 and 1982. Issue 2. Sale of Partnership Interest - Docket No. 19906-86
The second issue for decision is whether Petitioner Peter Muserlian sold a 24-percent interest in Upper New York Realty Company to T.E. Associates. However, we must first address some preliminary matters. The statutory notice of deficiency mailed to petitioners reflected the following language with respect to the sale of the partnership interest: "[A]fter examination of all the facts *517 and circumstances, it is determined that the transaction in which you [petitioner] and T.E. Associates were involved was not, in substance, a sale." Petitioners filed their petition on June 13, 1986. Respondent filed his Answer on July 25, 1986. The Answer contained specific admissions and denials of each material allegation in the petition. The Answer contained no other information relating to whether "the transaction * * * was not, in substance, a sale." On October 14, 1987, the Court served upon the parties a Notice Setting Case For Trial at the trial session beginning on March 14, 1988. On January 28, 1988, respondent filed a Motion for Leave to File Amended Answer in docket No. 19906-86 and respondent's Amended Answer was lodged with the Court on that same date. In his Amended Answer, respondent sought to disallow petitioners' use of installment reporting on the note as well as to withdraw admissions he made in his Answer. Petitioners filed objections to respondent's motion and the Court denied respondent's motion on February 9, 1988. On February 16, 1988, petitioners filed a motion for partial summary judgment in which they asked for summary judgment on the issue of *518 the sale of 24 percent of Peter Muserlian's interest in Upper New York Realty Company. On March 9, 1988, respondent filed an objection to petitioners' motion accompanied by a memorandum of law. In his memorandum of law, respondent, for the first time, contended that the sale of the partnership interest should not be recognized for Federal income tax purposes because of the application of the family partnership rules. In addition, respondent reiterated his contention that he should be permitted to withdraw the admissions of fact contained in his Answer. The case was called for trial on March 15, 1988, at which time the parties filed trial memoranda. Respondent, in his trial memorandum, complained about the refusal of the Court to permit him to withdraw the admissions of fact he made in his Answer. In addition, he argued that the government's primary position in the statutory notice of deficiency was that the purported sale of the partnership interest was a sham. Respondent also cited section 1.704-1(e), Income Tax Regs., stating that "Family partnerships must be closely scrutinized since the family relationship lends itself to paper arrangements *519 that have little or no relationship to reality." Respondent did not argue, however, that the family partnership rules would form a basis of his argument. During the trial on March 16, 1988, counsel for respondent began to cross examine Peter E. C. Muserlian as to the participation of the partners of T. E. Associates in business decisions affecting Upper New York Realty Company. Counsel for petitioners objected on the grounds of relevancy. Counsel for respondent replied that it was relevant under the family partnership rules, citing section 1.704-1(e), Income Tax Regs. Counsel for petitioners argued that the family partnership rules were beyond the scope of the pleadings. The Court sustained petitioners' objection to the question on the grounds of relevancy. The following excerpt from the transcript reflects the ruling of the Court: The Court: The taxability of the income of Upper New York Realty to Theodora Muserlian is based upon the substance of the transaction. It is not based upon any partnership law whatever. Mr. Kutten (counsel for respondent): That's correct, and I think we have to look at what the partners did in the context of THIS -- *520 The Court: It isn't the operation of the partnership that is involved. It is the transaction. Your -- the Respondent determined that the transaction was not a sale; therefore, if it is not a sale, there is no partnership ownership in Upper New York Realty. Consistent with your theory, it never happened. And T.E. Associates is not a partner. Mr. Kutten: Well our theory is for tax purposes there is no sale Your Honor, not in the real world. The Court: Well, of course for tax purposes. That's what we are here for, to determine tax purposes. We are not going through a futile exercise in legal training. That's your position. Your position is not based upon the partnership regulations. Family partnership regulations are not involved in this case -- thank goodness. (Laughter) If you will look up the Carriage Square Case, you will see the concurring opinion I wrote that ran about thirty pages on the partnership -- family partnership -- Despite the ruling of the Court, respondent devoted his entire opening brief to the family partnership rules. As to respondent's reliance upon the family partnership rules, the Court is offended at the contempt respondent has shown for *521 the Court's ruling at trial on that theory. The quotation from the transcript set forth above amply demonstrates in unmistakable terms that respondent would not be permitted to raise the family partnership rules as a theory. The statutory notice of deficiency reflects, as the government's primary position, that "the transaction * * * was not, in substance, a sale." "Although this Court possesses the inherent authority to sustain respondent's determination for reasons other than those assigned in his notice of deficiency ( Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973)), this should not be interpreted to afford respondent carte blanche authority to assert additional bases for his disallowance of specific items at any time prior to the issuance of an opinion." Seligman v. Commissioner, 84 T.C. 191, 198 (1985), affd. 796 F.2d 116 (5th Cir. 1986). Respondent is normally given three opportunities to advise petitioner and the Court of the nature of his defense in the statutory notice of deficiency, in the Answer, and in the Amendment to Answer. Seligman v. Commissioner, supra.
Having held at trial *522 that respondent could not rely upon the family partnership rules, it would be even more prejudicial to petitioners to permit respondent to do so on brief. The trial is over. How could petitioners adduce evidence to defend themselves against this new theory? The family partnership rules are detailed and complicated. Their application depends, in large part, upon all of the facts and circumstances. Carriage Square, Inc. v. Commissioner, 69 T.C. 119 (1977). Because the application of such a theory is highly dependent upon the facts, it would be extremely prejudicial to petitioners to permit the theory to be raised after the case proceeded to trial. The Commissioner did not apprise petitioners of the family partnership rules theory in the statutory notice of deficiency or in his Answer. This Court has many times (e.g., Leahy v. Commissioner, 87 T.C. 56 (1986); Seligman v. Commissioner, supra; Carnation Co. v. Commissioner, 71 T.C. 400, 413 (1978), affd. 640 F.2d 1010 (9th Cir. 1981); Shuster's Express, Inc. v. Commissioner, 66 T.C. 588, 593 (1976), affd. in an unreported *523 opinion (2d Cir. 1977, 77-2 USTC par. 9495, 40 AFTR 2d 77-5293)) admonished respondent of his responsibilities on raising new issues and new theories by the following quotation from Commissioner v. Transport Mfg. & Equip. Co., 478 F.2d 731, 736 (8th Cir. 1973), affg. 57 T.C. 469 (1971): the longer the Commissioner delays in not expressly advising the taxpayer of the intended theories, the more reason there is to conclude that the taxpayer has not received fair notice and has been substantially prejudiced so as to deny the Commissioner consideration of theories raised for the first time in post trial briefs. The Commissioner may avoid this uncertainty and discharge his duty of informing the taxpayer by expressly notifying the taxpayer of the intended theories in the deficiency notice and the Commissioner's answer. Our reiteration of the principles of Transport Mfg. & Equip. Co. has apparently fallen upon some deaf ears in respondent's counsel's office, including respondent's attorneys who filed the briefs in the instant case. We will not waste additional resources in attempting to educate respondent's counsel on this principle. *524 In his trial memorandum, in addition to citing section 1.704-1(e), Income Tax Regs., respondent cites Frank Lyon Co. v. United States, 435 U.S. 561 (1978); Rice's Toyota World, Inc. v. Commissioner, 752 F.2d 89 (4th Cir. 1985), affg. in part and revg. in part 81 T.C. 184 (1983); Rose v. Commissioner, 88 T.C. 386 (1987), affd. 868 F.2d 851 (6th Cir. 1989); and Cirelli v. Commissioner, 82 T.C. 335 (1984), in arguing that there is no sale of the partnership interest. Respondent called no witnesses and did not argue this "sham" theory or "substance v. form" theory on brief. Accordingly, we hold that he abandoned this theory. Theodore v. Commissioner, 38 T.C. 1011, 1041 (1962); Miami Valley Coated Paper Co. v. Commissioner, 28 T.C. 492, 497 (1959). Having held that respondent abandoned his theory on "sham" or "substance v. form" and having held that respondent cannot rely upon the family partnership rules, it follows that we hold for petitioners on this issue. As we have decided that T. E. Associates was the true owner *525 of the 24-percent interest in Upper New York Realty Company for Federal income tax purposes, we must address respondent's two alternative determinations as set forth in the statutory notice of deficiency in docket No. 19906-86. In his first alternative determination, the Commissioner used the following language in the statutory notice of deficiency: Alternatively, if it is ultimately decided that T. E. Associates was the true owner of the 24% interest in Upper New York Realty Company for Federal income tax purposes, it is alleged that T. E. Associates acquired this 24% interest under peculiar circumstances, which require an independent determination of the value of this 24% interest in Upper New York Realty Company. No proof of value of this interest has been provided by petitioners to substantiate the validity of the loan, the interest paid thereon and whether any of the amounts were inflated, or decreased, thereby causing a gift to any of the parties herein. In respondent's trial memorandum, he stated with respect to this alternative theory: "The gift tax case requires a comparison of the fair market value of the 24% interest in Upper New York Realty Company to the present *526 value of the purported consideration." Reference was also made by respondent to this valuation theory during oral argument on the motion for summary judgment in docket No. 19882-86 and the motion for partial summary judgment in docket No. 19906-86. Thereafter, respondent did not develop this issue at trial nor did he address it in his brief or reply brief. Petitioners employed an expert witness who testified at trial as to the fair market value of the 24-percent partnership interest. Respondent failed to offer any evidence whatsoever regarding the valuation of the partnership interest and, upon cross-examination of petitioners' expert witness, counsel for respondent limited his questions to the valuation of goodwill, an issue that relates to respondent's second alternative determination. The Commissioner determined that the value of the partnership interest exceeded the present value of the note, thus giving rise to a taxable gift. The gift tax case, docket No. 19882-86, covers this determination. On brief, respondent conceded the adjustments to petitioner's gift tax liabilities in docket No. 19882-86. We, therefore, conclude that respondent has abandoned this first alternative *527 determination. The Commissioner determined a second alternative argument in the statutory notice of deficiency. This adjustment in the statutory notice of deficiency is as follows: Alternatively, if it is ultimately decided that T. E. Associates was the true owner of the 24% interest in Upper New York Realty Company for Federal income tax purposes then the stepped-up basis for the depreciable assets for the purpose of Upper New York Realty Company's election under Section 754 shall be $ 4,455,322 rather than $ 10,743,262. The statutory notice does not explain how the Commissioner determined the stepped-up basis to be $ 4,455,322 but petitioners do not complain in their briefs about the lack of explanation. The record and briefs on this issue are unsatisfactory. The Court cannot ascertain on its own the computations that are involved in this issue partly because of the poor explanation in the statutory notice and the poor briefs which the parties have filed. A partnership may adjust the basis of partnership property pursuant to section 743(b) with respect to a transferee partner when *528 a partnership interest is transferred by sale or exchange or upon the death of a partner but only if it so elects in the manner as prescribed by section 754. In making the adjustment to the partnership assets, the partnership shall: (1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property, or (2) decrease the adjusted basis of the partnership property by the excess of the transferee partner's proportionate share of the adjusted basis of the partnership property over the basis of his interest in the partnership. The increase or decrease shall constitute an adjustment to the basis of partnership property with respect to the transferee partner only. The allocation of basis of partnership property with respect to specific assets shall be in accordance with the rules provided in section 755. Sec. 743(c). Section 755 sets forth two rules for allocating to specific partnership properties the total amount of the optional *529 adjustment to basis. The first rule allocates the adjustment in a manner which has the effect of reducing the difference between the fair market value and the adjusted basis of the partnership properties. Sec. 755(a). An increase in basis is allocated only to assets whose values exceed bases and a decrease is allocated to assets whose bases exceed value. These allocations are prorated according to the spread between value and basis. Sec. 1.755-1(a), Income Tax Regs.
Section 755(b) provides that the increases or decreases in the adjusted basis of partnership property shall be allocated to two classes of partnership property: (1) Capital assets and property described in section 1231(b); or (2) any other property of the partnership. "[T]he portion of the increase or decrease allocated to each class shall be further allocated to the bases of the properties within the class in a manner which will reduce the difference between the fair market value and the adjusted basis of partnership properties." Sec. 1.755-1(a)(1)(i), Income Tax Regs.
On the election filed by Upper New York Realty Company, it claimed the following stepped-up *530 basis for its assets: Land
$ 1,005,000.00
Buildings
10,711,544.00
Misc. Assets
31,717.78
Total
$ 11,748,261.78
We cannot tell from the record what values the Commissioner used in his allocation. Nevertheless, on brief he relies upon the values for the assets established by petitioners' expert witness. Petitioners do not complain in their reply brief about respondent's use of the values established by petitioners' expert. We, therefore, adopt the values for land, buildings, and miscellaneous assets established by petitioners' expert witness. There is no other evidence in the record from which to find such values. He valued the 24-percent partnership interest as follows, allocated to the following assets: Equipment
$    13,000
Land
115,500
Improvements 1,154,500 $ 1,283,000
Petitioners rely upon United States v. Cornish, 348 F.2d 175 (9th Cir. 1965). They contend that it represents authority for allocating to the depreciable assets a portion of the purchase price exceeding the fair market value of the depreciable assets. Respondent, in his reply brief, argues that Cornish is incorrect and the *531 allocation of cost to depreciable assets cannot be in excess of their fair market value. The Tax Court has not had the occasion to decide whether it agrees with the rationale of Cornish or not. It is unnecessary for us to make that decision in this case because we find it to be factually distinguishable. In Cornish the Court of Appeals held that the negotiated purchase price of the partnership interest broke down into three classes: the fair market value of the tangible assets, the nondepreciable going concern value of the partnership, and the partnership overvaluation which should be prorated between the tangible assets and the nondepreciable intangibles. In the instant case, as distinguished from Cornish, we find that there is no class of the purchase price allocable to partnership overvaluation. We have found as a fact that Petitioner Peter Muserlian structured the transaction so that the present value of the note would be approximately equal to the value of the partnership interest. The parties orally stipulated at trial that the present value of the note at the time of the sale was $ 1,215,984. We have found that the value of the 24-percent partnership interest *532 was $ 1,283,000. The difference is $ 67,016. Petitioner was one of the principal partners in Upper New York Realty Company and was not only knowledgeable about its affairs but also was knowledgeable about real estate matters. Based upon the record as a whole we conclude that he would not deliberately inflate the value of the partnership interest which he sold to the partnership consisting of the closest members of his family whom he intended to benefit. Respondent has conceded the overvaluation addition to tax. We hold, therefore, that there are only two classes of costs reflected in the purchase price, i.e., the fair market value of the tangible assets and the nondepreciable intangibles. We are not holding that we embrace this classification in Cornish, but we are holding that if we were inclined to apply Cornish we would find only two classes of property in the instant case. Therefore, we need not decide whether we would follow Cornish. As explained above, the present value of the note at the time of the sale was $ 1,215,984. But this does not represent the cost of the 24-percent partnership interest because the total consideration was payable under the terms *533 of the promissory note. The fair market value of the note reflects a discount for the use of money over the time that payment was deferred. Nevertheless, the $ 2,400,000 face of the note represents the cost of the partnership interest because T.E. Associates must pay the face of the note to acquire the partnership interest. Therefore, $ 2,400,000 must be allocated to 24 percent of the partnership assets which were sold. The $ 2,400,000 cost will first be allocated as follows: Equipment
$    13,000
Land
115,500
Improvements
1,154,500
$ 1,283,000
This allocation is based upon the fair market value of these assets by petitioners' expert witness. Subtracting the cost allocated to the assets from the total cost of $ 2,400,000, leaves $ 1,117,000 to be allocated. Respondent argues on brief that we should find goodwill to exist in the amount of $ 180,000, based upon assigning approximately 2 percent of the overall value to goodwill. Petitioners correctly point out in their reply brief that there is no basis for such a finding and we agree. We know of no rule of thumb which establishes 2 percent as the norm. The only evidence in the record offered by either *534 party to establish goodwill is the opinion of petitioners' expert that the partnership had no goodwill. He relied upon certain indicia to value the tangible assets. Counsel for respondent cross examined him to see why these factors would not give rise to a finding of goodwill. The expert witness refused to acknowledge the existence of goodwill yet he found the value of 24 percent of the tangible assets to be $ 1,283,000. Because petitioner sold the 24-percent interest in the partnership at a price that we have concluded is not inflated, $ 2,400,000, what can the difference of $ 1,117,000 be? We can only conclude from the record before us that it is a nondepreciable intangible asset in the nature of goodwill or going concern value. Respondent's opening brief contains some computations of the allocations which are unintelligible. Petitioners' opening brief contains no computations, and petitioners' reply brief contains no computations. Decision will be entered for the petitioner in docket No. 19882-86. Decisions will be entered under Rule 155 in docket Nos. 19906-86 and 48578-86. Footnotes
1. Cases of the following petitioners are consolidated herewith: Peter Muserlian, docket No. 19882-86; Peter Muserlian and Theodora Muserlian, docket No. 19906-86; and Peter E. C. Muserlian, docket No. 48578-86.↩
2. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable years 1981 and 1982. ↩
3. Respondent has conceded the adjustments raised in docket No. 19882-86.↩
4. Respondent has conceded the addition to tax for valuation overstatement, sec. 6659, raised in his alternative determination in the statutory notice of deficiency in docket No. 19906-86.↩
5. For convenience, the transactions will be referred to as loans; however, this reference does not imply that we view the transactions as bona fide loans for Federal income tax purposes.↩
6. On brief, respondent contends that Upper New York Realty Company's election under sec. 754↩ was $ 11,748,261.78. Respondent has not explained this change.